******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE GABRIEL S., JR.*
(SC 20788)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker and Alexander, Js.

*Syllabus*

The respondent father appealed from the trial court's judgment terminating
his parental rights with respect to his child, G. Shortly after G was
born, the petitioner, the Commissioner of Children and Families, filed
a petition of neglect, was granted temporary custody of G, and placed
G in a foster home. Thereafter, using a preprinted form issued by the
Judicial Branch, the petitioner filed a petition to terminate the respon-
dent's parental rights pursuant to statute (§ 17a-112 (j) (3) (E)), which
requires the petitioner to prove, inter alia, that the respondent's parental
rights with respect to another child previously had been terminated
pursuant to a petition filed by the petitioner. At trial, the petitioner's
counsel presented evidence that the respondent's parental rights pre-
viously had been terminated in Rhode Island. At the end of the petition-
er's case, the respondent's counsel argued that the petitioner had failed,
as a matter of law, to satisfy the requirements for termination set forth
in § 17a-112 (j) (3) (E) because the petitioner did not present any evi-
dence that the respondent's parental rights previously had been termi-
nated in Connecticut. The petitioner's counsel indicated his belief that
the termination petition had been amended to include grounds for termi-
nation under § 17a-112 (j) (3) (B) (i), and, in the event it had not been
amended, he moved to do so. The trial court granted counsel's oral
motion to amend the petition, as well as a six week continuance of the
trial to allow the respondent's counsel an opportunity to reevaluate the
petitioner's position. The petitioner then filed a written motion to amend
the petition to terminate the respondent's parental rights and, pursuant
to the relevant rules of practice (§ 33a-1 (b)), an amended summary of
the facts, both of which identified § 17a-112 (j) (3) (B) (ii) as the basis
for termination. Under that provision, the petitioner was required to
demonstrate, inter alia, that the respondent had failed to rehabilitate
and that G had been in the petitioner's custody for at least fifteen months.
Although the court granted the petitioner's written motion to amend,
the petitioner did not amend the preprinted, form petition to reflect that
the petitioner was seeking termination under § 17a-112 (j) (3) (B) (ii).
When trial resumed after the continuance, the only additional evidence
the petitioner presented was the amended summary of the facts, which
repeated the original allegations and alleged that G had been in the
petitioner's custody for more than fifteen months. The respondent testi-
fied about his attempts to comply with the steps that would facilitate
G's return to his custody but never claimed that he did not receive
notice that termination was being sought under § 17a-112 (j) (3) (B) (ii).
The trial court granted the petition to terminate the respondent's parental
rights pursuant to § 17a-112 (j) (3) (B) (ii), finding, inter alia, that the
respondent had failed to rehabilitate and that G had been in the petition-
er's custody for more than fifteen months. On appeal from the trial
court's judgment, the respondent claimed that his due process right to
adequate notice of the grounds for terminating his parental rights was
violated insofar as the petitioner was allowed to amend the termination
petition after the close of evidence and insofar as his parental rights
were terminated pursuant to § 17a-112 (j) (3) (B) (ii) when the petitioner
never amended the preprinted, form petition to indicate that the petition
was premised on that particular provision of the statute.

*Held* that the respondent's due process right to adequate notice of the
grounds for terminating his parental rights was not violated, as the
petitioner's amended summary of the facts, along with the trial court's
granting of a continuance, afforded the respondent constitutionally ade-
quate notice that the petitioner had elected to rely on § 17a-112 (j) (3)
(B) (ii) in seeking to terminate his parental rights as to G:

There was no merit to the respondent's claim that principles of due

process required strict compliance with certain statutory (§ 45a-715 (b) (6) and (c)) procedures and rules of practice (§ 33a-1 (a)) governing petitions to terminate parental rights, as those provisions did not clearly and unambiguously require the petitioner to amend the grounds for termination in the preprinted, form petition, rather than in the summary of the facts, in the event the trial court grants the petitioner permission to amend the termination petition.

Even if this court assumed that the petitioner violated the statutory notice provisions and the rules of practice, principles of due process are not violated when the respondent parent has been provided adequate notice of the amendment to the termination petition and a reasonable opportunity to prepare a response, as the price of requiring strict compliance with those provisions in child dependency cases would be unacceptably high in light of the strong public interest in the prompt resolution of such proceedings, in which the welfare of a child is at issue and delay is inherently prejudicial.

In the present case, although the petitioner's counsel initially indicated that he would be adding § 17a-112 (j) (3) (B) (i) as a ground for termination when he orally moved to amend the termination petition, he clarified in both the amended summary of the facts and the written motion to amend the petition, which superseded the oral motion and was granted by the trial court, that § 17a-112 (j) (3) (B) (ii) was the specific basis for termination.

Moreover, in light of the amended summary of the facts and the written motion to amend, the respondent could not reasonably have believed that, when the trial resumed after the continuance, the petitioner would seek to adjudicate the termination petition under either § 17a-112 (j) (3) (B) (i) or (E), especially when the pursuit of termination under § 17a-112 (j) (3) (E) already had been shown to be unviable and when the respondent testified exclusively about his attempts to comply with the specific steps that would facilitate the return of G to his custody, which was relevant only to termination under § 17a-112 (j) (3) (B) (ii).

Furthermore, the respondent expressed no surprise or confusion when, at the recommencement of the trial after the continuance, the petitioner's counsel indicated that he was seeking termination pursuant to the amended summary of the facts, which was premised on § 17a-112 (j) (3) (B) (ii).

In addition, even if strict compliance with the statutory notice provisions and rules of practice was required and the petitioner's failure to strictly comply violated due process, any such violation was harmless beyond a reasonable doubt because, to the extent the respondent claimed that he did not receive adequate notice that the petitioner would proceed under § 17a-112 (j) (3) (B) (ii), the respondent did not claim that there was additional evidence on the issue of his rehabilitation that he would have presented if he had received adequate notice, the uncontroverted evidence showed that G had been in the petitioner's custody for at least fifteen months at the time of trial, and the respondent did not claim that he could produce evidence to the contrary.

Argued March 29—officially released July 14, 2023**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of New London, Juvenile Matters at Waterford, where the court, *Hoffman, J.*, granted the petitioner's motion to amend the petition; thereafter, the case was tried to the court, *Hoffman, J.*; judgment terminating the respondents' parental rights, from which the respondent father appealed. *Affirmed.*

*Benjamin M. Wattenmaker*, assigned counsel, for the appellant (respondent father).

*Elizabeth Bannon*, assistant attorney general, with

whom were *Evan O'Roark*, assistant attorney general, and, on the brief, *William Tong*, attorney general, for the appellee (petitioner).

*Opinion*

ROBINSON, C. J. This appeal requires us to determine whether the trial court violated the constitutional due process right of the respondent father, Gabriel S., to adequate notice of the grounds for terminating his parental rights when, after the close of evidence, it granted the motion of the petitioner, the Commissioner of Children and Families, to amend the petition to allege a different ground for the termination of his parental rights pursuant to General Statutes § 17a-112 (j) (3).[1] The petitioner initially filed a petition to terminate the parental rights of the respondent with respect to his minor child, Gabriel S., Jr. (Gabriel), pursuant to § 17a-112 (j) (3) (E) (ground (E)). After the conclusion of evidence, the respondent requested that the court deny the petition on the ground that the petitioner had failed to present any evidence that would support a finding that he previously had had his parental rights terminated with respect to another child pursuant to a petition filed by the petitioner, as is required under ground (E). The trial court then granted the petitioner's motion to amend the petition to allege another ground for termination pursuant to Practice Book § 34a-1 (d).[2] The trial court also granted a continuance to allow the respondent to prepare a response to the amended petition. Thereafter, the petitioner filed an amended summary of the facts in support of the petition, alleging that grounds for termination of the respondent's parental rights existed pursuant to § 17a-112 (j) (3) (B) (ii) (ground (B) (ii)). The petitioner did not, however, amend the petition itself to reflect the new ground for termination alleged in the amended summary of the facts. At the conclusion of the continued trial, the trial court granted the petition to terminate the respondent's parental rights as to Gabriel on ground (B) (ii). The respondent now appeals[3] from the judgment of the trial court terminating his parental rights, claiming that the court violated his due process right to adequate notice of the grounds for the petition to terminate his parental rights by (1) allowing the petitioner to amend the petition after the close of evidence, and (2) terminating the respondent's parental rights pursuant to ground (B) (ii) when the petitioner never filed an amended petition alleging that ground. We disagree, and, accordingly, we affirm the trial court's judgment.

The record reveals the following undisputed facts and procedural history. Gabriel, the son of Santasia S. and the respondent, was born in January, 2020, at Lawrence + Memorial Hospital in New London. Upon learning of the respondent's history as a sex offender, hospital staff reported their concerns about the child's safety to the petitioner. On January 17, 2020, the petitioner filed a petition of neglect and an order of temporary custody on behalf of Gabriel. The trial court, *Driscoll, J.*, found Gabriel to be in immediate physical

danger from his surroundings and vested temporary custody of Gabriel in the petitioner. The same day, the petitioner filed a neglect petition on Gabriel's behalf and placed him in a nonrelative foster home, where he currently remains.

Thereafter, the petitioner filed a petition to terminate the respondent's parental rights pursuant to ground (E).[4] Under ground (E), the petitioner was required to prove that (1) the respondent had failed or was unable or unwilling to rehabilitate such that he could assume a responsible position in Gabriel's life within a reasonably foreseeable time, and (2) the respondent's parental rights to another child previously had been terminated pursuant to a petition filed by the petitioner. See General Statutes § 17a-112 (j) (3) (E). In support of the second adjudicatory ground, the petitioner alleged that, in 2019, the respondent's parental rights with respect to two children had been terminated in Rhode Island.

Trial on the petition began on April 25, 2022. The petitioner presented evidence, as relevant to this appeal, in the form of an exhibit that the respondent's parental rights previously had been terminated in Rhode Island, which the trial court, *Hoffman, J.*,[5] admitted without objection by the respondent. The respondent presented no evidence. At the conclusion of the petitioner's case, counsel for the respondent argued that the petitioner had failed, as a matter of law, to establish under ground (E) that the respondent's parental rights previously had been terminated pursuant to a petition filed by the petitioner because the evidence showed that his parental rights to two children previously had been terminated in Rhode Island, not Connecticut. Counsel for the petitioner did not dispute that the petitioner was required to establish that the previous terminations of parental rights had occurred in Connecticut but stated that he had been under the impression that the petition had been "amended to allege [grounds for termination of the respondent's parent rights pursuant to § 17a-112 (j) (3) (B) (i) (ground (B) (i))]. But, [in] the event it wasn't amended, the [petitioner] would move to amend the petition right now." Counsel for the petitioner argued that, under Practice Book § 34a-1 (d), the trial court had the authority to allow an amendment "up until the point that the adjudication enters."

Counsel for the respondent then argued that principles of due process required the court to deny the petitioner's eleventh hour motion to amend the petition. Counsel for the respondent also requested that, if the trial court were to grant the motion, it also grant a continuance so that he could reevaluate the respondent's position. The court granted the petitioner's motion to amend and the respondent's request for a continuance.

The next day, the petitioner filed an amended summary of the facts[6] that alleged substantially the same

facts that originally had been alleged in support of ground (E), but also alleging that Gabriel had been in the custody of the petitioner for more than fifteen months, as is required under ground (B) (ii). See General Statutes § 17a-112 (j) (3) (B) (ii). On the day after he filed the amended summary of the facts, the petitioner's counsel filed a written motion to amend the petition to terminate the respondent's parental rights by removing ground (E) and adding ground (B) (ii). Ground (B) (ii) required the petitioner to establish that (1) Gabriel was neglected, abused or uncared for and had been in the petitioner's custody for at least fifteen months, and (2) the respondent had been provided specific steps to take to facilitate the return of Gabriel to him and had failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, he could assume a responsible position in Gabriel's life. See General Statutes § 17a-112 (j) (3) (B) (ii). The trial court granted the written motion. The petitioner never amended the petition itself, which is a preprinted form promulgated by the Judicial Branch, to indicate that the petitioner was now seeking an adjudication pursuant to ground (B) (ii) instead of ground (E).

Following the continuance, trial on the petition for termination of the respondent's parental rights resumed on June 6, 2022. The only additional evidence offered by the petitioner's counsel was the amended summary of the facts. The respondent testified on his own behalf and asked the trial court to deny the petition to terminate his parental rights, but he made no claim that the petitioner's counsel had failed to provide adequate notice that the petitioner was seeking termination of his parental rights pursuant to ground (B) (ii).

The trial court ultimately found that the petitioner had proven by clear and convincing evidence the existence of grounds for termination under ground (B) (ii), namely, that the respondent had failed to rehabilitate[7] and that Gabriel had been in the custody of the petitioner for more than fifteen months. The court also made the required written findings under § 17a-112 (k). Finally, the court found by clear and convincing evidence that terminating the respondent's parental rights would be in the best interest of Gabriel pursuant to § 17a-112 (j) (2). Accordingly, the court granted the petition for termination of the respondent's parental rights. This appeal followed.

On appeal, the respondent claims that the trial court violated his right to adequate notice under the due process clause of the fourteenth amendment to the United States constitution by (1) allowing the petitioner to amend the petition to terminate his parental rights after the close of evidence, and (2) terminating his parental rights pursuant to ground (B) (ii) when the petitioner never filed an amended petition alleging that ground.[8]

Although the respondent has ostensibly presented two distinct claims in support of his challenge to the trial court's ruling, the essence of both claims is that he was deprived of adequate notice of the grounds for terminating his parental rights due to the petitioner's failure to complete the preprinted petition form in strict compliance with the governing statute and the rules of practice. See General Statutes § 45a-715 (b) and (c); Practice Book § 33a-1 (a). We disagree and conclude that the amended summary of the facts filed by the petitioner's counsel in this case, in conjunction with the trial court's granting of the respondent's request for a continuance, afforded the respondent constitutionally adequate notice that the petitioner had elected to rely on ground (B) (ii).

Our resolution of the respondent's claims is guided by familiar due process principles. It is well established that a person in jeopardy of having his or her parental rights terminated has a constitutional due process right to adequate notice of the grounds for termination. See, e.g., *In re Baby Girl B.*, 224 Conn. 263, 295–96, 618 A.2d 1 (1992). "Notice is not a mere perfunctory act in order to satisfy the technicalities of a statute, but has, as its basis, constitutional dimensions. An elementary and fundamental requirement of due process in any proceeding [that] is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Internal quotation marks omitted.) Id. "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that [a] reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity." (Internal quotation marks omitted.) *In re Donna M.*, 33 Conn. App. 632, 638, 637 A.2d 795, cert. denied, 229 Conn. 912, 642 A.2d 1207 (1994), and cert. denied, 229 Conn. 912, 642 A.2d 1207 (1994). "[T]here is no violation of due process when a party in interest is given the opportunity at a meaningful time for a court hearing to litigate the question [at issue]." *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 196 Conn. 172, 176–77, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985).

In support of his claim that his due process rights were violated, the respondent claims that the statutory procedures and rules of practice governing petitions to terminate parental rights clearly require the petitioner to amend the grounds elected on the preprinted petition form, which is promulgated by the Judicial Branch, when the petitioner has been granted permission to amend a petition. Specifically, he relies on § 45a-715 (b) (6) ("[the petition to terminate parental rights] shall set forth with specificity . . . the facts upon which termination is sought, [and] the legal grounds authorizing termination"), § 45a-715 (c) ("[i]f the information

required under subdivisions (2) and (6) of subsection (b) of this section is not stated, the petition shall be dismissed"), and Practice Book § 33a-1 (a) ("[t]he petitioner shall set forth with reasonable particularity, including statutory references, the specific conditions which have resulted in the situation which is the subject of the petition"). He effectively claims that principles of due process require strict compliance with these procedures. We disagree.

First, contrary to the respondent's contention, these provisions do not clearly and unambiguously require the petitioner to amend the preprinted form petition to terminate parental rights, rather than the summary of the facts, when the trial court has granted a motion to amend. We note that Practice Book § 33a-1 (b) provides in relevant part that the "summary of the facts substantiating the allegations of the petition . . . shall be attached thereto and shall be incorporated by reference." Accordingly, it is arguable that an amendment to the summary of the facts would be incorporated into, and thereby amend, the petition itself. See *In re T.C.*, 307 Mont. 244, 250, 37 P.3d 70 (2001) (in determining whether petition to terminate parental rights provided adequate notice of ground for termination, court considered petitioner's "claim *as a whole* and . . . the reason and spirit of the allegations" (emphasis added; internal quotation marks omitted)). Although we recognize that this procedure would result in a potential internal inconsistency, with the preprinted form petition indicating one ground for termination and the amended summary of the facts another, it would be reasonable to conclude that the later filing would supersede the earlier one, particularly when it asserts in detail a specific new ground for the termination of parental rights.[9]

Second, even if we were to assume that the petitioner violated the statutory provisions and rules of practice, we conclude that principles of due process are not violated when the record establishes that the parent has actually been provided adequate notice of an amendment and a reasonable opportunity to prepare a response. See *In re Baby Girl B.*, supra, 224 Conn. 295–96; see also *Dennis* v. *Dejong*, 557 Fed. Appx. 112, 118 (3d Cir. 2014) (although dependency petition "was not filed in strict compliance with the time required by state law, the question of what process is due for purposes of the [d]ue [p]rocess [c]lause is a matter of federal constitutional law, not state law," and due process was satisfied because parents received adequate, actual notice of proceeding (internal quotation marks omitted)); *Giovanni* v. *Lynn*, 48 F.3d 908, 912 (5th Cir.) ("[When] a liberty . . . interest is infringed, the process [that] is due under the United States [c]onstitution is that measured by the due process clause, not that called for by state regulations. . . . Mere failure to accord the procedural protections called for by state law or regulation does not of itself amount to a denial of due pro-

cess." (Citation omitted.)), cert. denied sub nom. *Giovanni* v. *Stalder*, 516 U.S. 860, 116 S. Ct. 167, 133 L. Ed. 2d 109 (1995); *In re Petition by Wayne County Treasurer*, 478 Mich. 1, 10 n.19, 732 N.W.2d 458 (2007) (when government does not strictly comply with statutory notice provision, procedure "is sound as long as there is constitutionally adequate notice"); *In re Consolidated Reports & Return by Tax Claims Bureau*, 132 A.3d 637, 645 (Pa. Commw.) (strict compliance with statutory notice requirement was not required when government proved that party received actual notice), appeal denied, 636 Pa. 653, 141 A.3d 482 (2016). A strict compliance requirement would be particularly inappropriate in this context in light of the significant differences between child dependency proceedings, in which the welfare of a child is at issue and delay is inherently prejudicial, and other judicial proceedings. Cf. *In re Amias I.*, 343 Conn. 816, 840, 276 A.3d 955 (2022) ("the significant differences between child dependency proceedings and other judicial proceedings militate decisively against applying a per se reversible error rule in dependency cases"); id. ("[w]e cannot agree . . . that prejudice is irrelevant in a dependency proceeding when the welfare of the child is at issue and delay in resolution of the proceeding is inherently prejudicial to the child" (internal quotation marks omitted)). Indeed, "[t]he price that would be paid for [requiring strict compliance with statutory notice provisions and the rules of practice in child dependency cases], in the form of needless reversals of dependency judgments, is unacceptably high in light of the strong public interest in prompt resolution of these cases so that the children may receive loving and secure home environments as soon as reasonably possible."[10] (Internal quotation marks omitted.) Id., 840–41.

We conclude, as a matter of law, that the respondent's due process rights were not violated because he received actual notice of the grounds for the termination provision. The record reveals that, although counsel for the petitioner indicated that he would be adding ground (B) (i) as a ground for termination when he made the oral motion, he clarified the specific basis for termination the next day when he filed the amended summary of the facts, stating that he was relying on ground (B) (ii). The petitioner's counsel also expressly stated that he was adding ground (B) (ii) in his written motion to amend the petition, which superseded the oral motion, and which the trial court also granted. In light of these filings, we conclude that the respondent could not reasonably have believed that, after the trial court granted the petitioner's motion to file an amended petition, as well as granting a six week continuance to allow the respondent to prepare a response, there was any real possibility that, when the trial resumed, the petitioner would again proceed pursuant to ground (E), which had already been shown to be unviable as a matter of

law. Nor could the respondent reasonably have been unsure as to whether the petitioner intended to proceed under ground (B) (i) or (B) (ii) when the petitioner's written filings, which followed and superseded the oral motion, made it clear that the petitioner intended to proceed under ground (B) (ii). Indeed, the respondent expressed no surprise or confusion when, at the continuation of the trial on June 6, 2022, counsel for the petitioner indicated that he was seeking termination of the respondent's parental rights pursuant to the amended summary of the facts, which was premised on ground (B) (ii). To the contrary, after the petitioner's counsel indicated that he did not intend to call any witnesses, the respondent proceeded to testify on his own behalf about his attempts to comply with the specific steps that had been provided to him to facilitate the return of Gabriel to his custody, which evidence was relevant only to ground (B) (ii).[11]

Moreover, even if we were to assume that the statutory and Practice Book provisions governing petitions to terminate parental rights require the petitioner to amend the form petition and that the failure to comply strictly with that requirement violates due process, any such violation would be harmless beyond a reasonable doubt in the present case. See, e.g., *In re Amias I.*, supra, 343 Conn. 833–34, 840 (when party establishes constitutional error in dependency proceeding, petitioner must demonstrate harmlessness beyond reasonable doubt). To the extent that the respondent claims that he did not receive adequate notice that his failure to rehabilitate would be one of the grounds for terminating his parental rights when the trial continued because it was possible that the petitioner would proceed under ground (B) (i), any constitutional violation was harmless beyond a reasonable doubt because he makes no claim that there was additional evidence on that issue that he would have presented if he had received adequate notice.[12] Cf. *In re Ivory W.*, 342 Conn. 692, 732 n.26, 271 A.3d 633 (2022) (suggesting that, even if trial court improperly denied motion for continuance in termination of parental rights proceeding, denial was harmless because "the respondent [mother never] explained how the testimony that she would have given if the trial court had granted her motion for a continuance would have affected the outcome of the termination proceeding"). Similarly, to the extent that the respondent claims that he was not on notice that the petitioner would claim under ground (B) (ii) that Gabriel had been in her custody for at least fifteen months, the uncontroverted evidence in the record shows that Gabriel had been in the petitioner's custody since January 17, 2020, and the respondent makes no claim that he could produce evidence to the contrary.[13]

In support of his claim to the contrary, the respondent relies on the Appellate Court's decisions in *In re Donna M.*, supra, 33 Conn. App. 632, and *In re Christian P.*,

98 Conn. App. 264, 907 A.2d 1261 (2006). Both of these cases are distinguishable. In *In re Donna M.*, supra, 634, an attorney for the minor child filed a petition seeking a determination of neglect premised on an allegation by the child's mother that the child's father had sexually abused her. Thereafter, the Department of Children and Youth Services (department) moved to amend the petition to include allegations of neglect against the mother. Id., 635. A hearing on the petition commenced on April 21, 1992, at which the department withdrew its motion to amend the petition, and the child's attorney requested permission to amend the petition, which the trial court granted. Id. The child's "mother objected to the commencement of evidence prior to the filing of the amended petition. The trial court overruled the objection and commenced trial." Id. On July 17, 1992, while the hearing on the neglect petition was still pending, the child's attorney filed an amended petition, alleging that, "in the event that the allegations of sexual abuse by the father were not true . . . the mother was abusing the child by . . . fabricating false claims of sexual abuse . . . ." Id., 636. The mother again objected on the ground that the trial was at an advanced stage, and the trial court again overruled her objection. Id. Thereafter, the trial court found that the mother had intentionally made false reports of sexual abuse and that these actions constituted neglect and abuse. Id., 637. On the basis of those findings, the court ordered that the child be committed to the custody of the department for a period of eighteen months. Id. On appeal, the Appellate Court concluded that, because the amended petition was filed after a significant amount of evidence had been produced at trial, and because the amendment changed the basic nature of the alleged misconduct, allowing the amendment was fundamentally unfair and violated the mother's due process right. Id., 639. *In re Donna M.* is distinguishable because, unlike in the present case, the amended petition changed the basic nature of the alleged misconduct, and the court did not order a continuance of the neglect proceeding to afford the mother an opportunity to prepare a response to the new allegations. Here, the only new allegation contained in the amended petition was that the child had been in the petitioner's custody for fifteen months, and the court allowed a six week continuance so that the respondent could prepare a response.

In *In re Christian P.*, supra, 98 Conn. App. 266, the petitioner filed a petition to terminate the respondent mother's parental rights with respect to one of her children under ground (E) on the basis of the mother's failure to rehabilitate. The petitioner did not allege the lack of an ongoing parent-child relationship pursuant to § 17a-112 (j) (3) (D). Id. Nevertheless, the trial court terminated the mother's parental rights with respect to the child on the ground that she had no ongoing parental relationship with the child. Id. On appeal, the Appellate

Court concluded that, because the mother did not have notice that her parental rights could be terminated on that ground, termination on that ground was improper. Id., 268. *In re Christian P.* is distinguishable because the petitioner filed *nothing* in that case that would have placed the mother on notice that termination of her parental rights was being sought on the ground that she had no ongoing parental relationship with the child. In contrast, in the present case, the petitioner filed a motion to amend the petition and an amended summary of the facts, both of which expressly indicated that the petitioner was seeking termination of the respondent's parental rights under ground (B) (ii). We further note that, unlike both *In re Christian P.* and *In re Donna M.*, even if there had been a failure to provide adequate notice of the ground for the petition in the present case, any such failure was harmless because the respondent has made no claim that, if he had received adequate notice, he could have produced evidence to rebut the petitioner's claims under ground (B) (ii) that he had failed to rehabilitate and that Gabriel had been in the petitioner's custody for at least fifteen months.

For the foregoing reasons, we conclude that the trial court did not violate the respondent's constitutional due process right to adequate notice when it granted the petitioner's motion to amend the petition to terminate his parental rights after the close of evidence and terminated the respondent's parental rights pursuant to ground (B) (ii) when the petitioner never amended the preprinted form petition to indicate that the petition was premised on that ground. We therefore affirm the judgment of the trial court terminating the respondent's parental rights pursuant to § 17a-112 (j) (3) (B) (ii).

The judgment is affirmed.

In this opinion the other justices concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** July 14, 2023, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding, or (ii) is found to be neglected, abused or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reason-

able time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . [or] (E) the parent of a child under the age of seven years who is neglected, abused or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families . . . ."

[2] Practice Book § 34a-1 (d) provides: "A petition may be amended at any time by the judicial authority on its own motion or in response to a motion prior to any final adjudication. When an amendment has been so ordered, a continuance shall be granted whenever the judicial authority finds that the new allegations in the petition justify the need for additional time to permit the parties to respond adequately to the additional or changed facts and circumstances."

[3] The respondent appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The petitioner also sought termination of the parental rights of Gabriel's mother, Santasia S. The trial court ultimately granted that petition on the ground that she voluntarily and knowingly consented to the termination of her parental rights. The court's termination of the parental rights of Santasia S. is not at issue in this appeal.

[5] All subsequent references to the trial court are to Judge Hoffman.

[6] Practice Book § 33a-1 (b) provides in relevant part that "[a] summary of the facts substantiating the allegations of the petition . . . shall be attached thereto and shall be incorporated by reference."

[7] Because the respondent does not challenge on appeal the reasonableness of the factual findings with respect to ground (B) (ii), we need not recite the evidence that supported those conclusions.

[8] To the extent that these claims were not raised at trial, the petitioner concedes that they are reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

In addition to these claims, the respondent contends that (1) "the trial court's memorandum of decision does not clarify whether it terminated the [respondent's] parental rights based on ground [(B) (i)] or ground [(B) (ii)]," and (2) the petitioner never articulated good cause for her motion to amend the petition. To the extent that the respondent suggests that reversal of the judgment is warranted on these grounds, we disagree. The trial court noted in its memorandum of decision that it was required to determine whether the respondent had failed to rehabilitate pursuant to "§ 17a-112 (j) (3) (B)." (Internal quotation marks omitted.) The failure to rehabilitate language is found in § 17a-112 (j) (3) (B) (ii), not in § 17a-112 (j) (3) (B) (i). In addition, the trial court found that the evidence "clearly and convincingly establishes that . . . [Gabriel] has been in the custody of [the petitioner] for at least fifteen months," which is a requirement found only in ground (B) (ii). It is clear, therefore, that the court's ruling was premised on ground (B) (ii).

With respect to the respondent's claim that the petitioner did not show good cause for the amendment of the petition, we note that, at oral argument before this court, counsel for the petitioner represented that, if the trial court had denied the oral motion to amend the petition, he would simply have withdrawn the petition and filed a new one premised on ground (B) (ii) the next day. The respondent made no claim that the petitioner would have been barred from doing so. Accordingly, we find unpersuasive the respondent's argument that he was harmed by the trial court's granting of the motion to amend in the absence of a showing of good cause because, if the motion had been denied, he would have prevailed as a matter of law in his attempt not to have his parental rights terminated.

[9] As we discuss more fully subsequently in this opinion, although it is not entirely clear to us whether the rules of practice required the petitioner to amend the petition itself, it is indisputable that principles of due process require the petitioner to provide actual notice that clearly identifies the ground for the petition.

[10] We emphasize that we conclude only that principles of due process do not require strict adherence with the rules of practice governing notice of the grounds for a petition to terminate parental rights, but require only that the petitioner provide actual notice. We express no opinion on the issue of whether due process requires strict compliance with other procedural rules

and statutes governing termination proceedings.

[11] We further note that Gabriel's attorney stated during closing argument that "the [petitioner] has amended the petition to include [ground (B) (i)] failure to rehabilitate . . . ." Counsel for the petitioner stated that Gabriel's attorney had "misspoken" and that the petition actually had been amended to include a claim under ground (B) (ii). Counsel for the respondent did not respond to this remark.

[12] As we previously explained, the respondent testified on his own behalf on this issue upon continuation of the trial.

[13] Indeed, at oral argument before this court, counsel for the respondent was unable to articulate any prejudice that the respondent had suffered as a result of the purported lack of adequate notice of ground (B) (ii) as a basis for the petition to terminate his parental rights. Nevertheless, he maintained that the respondent's due process rights were violated, thereby effectively contending that a failure to provide adequate notice is structural error. As we already indicated, however, this court previously has held that "the significant differences between child dependency proceedings and other judicial proceedings militate decisively against applying a per se reversible error rule in dependency cases." *In re Amias I.*, supra, 343 Conn. 840. We see no reason to depart from that rule in the present case.

―――――――――――――――――――――